IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUNIL NAYYAR, M.D., | : | |
| Plaintiff, | : | Case No. 2:12-CV-00189 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| MT. CARMEL HEALTH SYSTEMS, *et al.*, | : | Magistrate Judge Norah King |
| Defendants. | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Remand ("Motion"). For the reasons set forth herein, Plaintiff's Motion is **DENIED**. Furthermore, the Court hereby **CONSOLIDATES** *Nayyar v. Mt. Carmel Health System, et al.* ("*Nayyar II*"), case no. 2:12-cv-00189, with *Nayyar v. Mt. Carmel Health System, et al.* ("*Nayyar I*"), case no. 2:10-cv-00135.

**II. BACKGROUND**

**A. Factual History**

Plaintiff, Sunil Nayyar, M.D. ("Nayyar"), is a resident of Franklin County, Ohio and Defendant, Mount Carmel Health Systems ("MCHS"), operates four hospitals in Franklin County, Ohio. (Compl. ¶¶ 4-6). From July 2006 to July 2009, Mount Carmel Health Systems employed Nayyar as a resident physician at its Mount Carmel West Facility in Franklin County. (*Id*. ¶ 4). In July 2009, MCHS terminated Nayyar's employment. (*Id*. ¶¶ 23-25).

On February 16, 2010, Nayyar filed suit against MCHS in this Court alleging his termination was motivated by race and national origin discrimination in violation of Title VII and § 1981, among other related claims. While that suit, *Nayyar I*, case no. 2:10-cv-00135, was pending

before this Court, on February 13, 2012, Nayyar filed a suit (*Nayyar II*) in the Franklin County Court of Common Pleas substantially based on the same events and facts that are the basis of *Nayyar I*. (*Id*.)  In addition to the claims made in *Nayyar I*, *Nayyar II* alleged that MCHS had terminated a similarly situated, Caucasian employee named Jonathan Borders. (*Id*. ¶¶ 53-57).  In *Nayyar II's* fourth claim for relief, under § 4112.02 and § 4112.99 of the Ohio Revised Code, Nayyar contends MCHS, with the purpose of defeating Nayyar's claims of race and national origin discrimination brought in *Nayyar I*, terminated Borders only after *Nayyar I* had identified him as a similarly situated person who had not suffered disparate treatment. (*Id*.  ¶¶ 76-79). Thus, in *Nayyar II*, Nayyar sought relief under state law and common law for the same injury that was alleged in *Nayyar I*, as well as relief for the "depriv[ation]" of his race and national origin discrimination claims *Nayyar I*. (*Id*. ¶ 79).

### B.  Procedural History

On March 1, 2012, MCHS filed a Notice of Removal, asking that *Nayyar II* be removed from the Franklin County Court of Common Pleas to this Court on the basis of federal question jurisdiction (28 U.S.C. § 1331) under 28 U.S.C. §§ 1441 and 1446. *Nayyar II* was referred to this Court owing to the case's similarity to *Nayyar I*, which continues to pend before the Court. Nayyar now moves to remand *Nayyar II* to the Franklin County Court of Common Pleas, alleging that there is no substantial federal question. Therefore, the threshold issue before this Court is whether *Nayyar II* raises a substantial federal question such that this Court has subject matter jurisdiction under 28 U.S.C. § 1331.  This issue has been briefed by the parties and is now ripe for decision.

### III. STANDARD OF REVIEW

Removal of cases from state to federal court is governed by 28 U.S.C. § 1441(a), which provides that "any civil action brought in state court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the district court of the United States . . . where such action is pending." Moreover, "the party asserting jurisdiction 'must carry throughout the litigation the burden of showing that he is properly in court.'" *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989), (quoting *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189 (1936)). Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction is determined at the time of removal, and subsequent events, "whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007), (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)).

### IV. LAW & ANALYSIS

#### A. Motion to Remand

In moving to remand, Nayyar argues that in *Nayyar II* he has not asserted a federal claim, as all his claims are based on state law. Furthermore, Nayyar contends that to the extent his state-law claims implicate federal law, the federal question is not a substantial one. MCHS counters with the argument that Nayyar's fourth claim in *Nayyar II* rests on whether he has a valid claim under Title VII, which, it argues, is a substantial federal question that here is outcome determinative. Nayyar's fourth claim, under the heading of "[Ohio] Revised Code 4112.02 and 4112.99," is:

3

> 77.     Plaintiff identified in another lawsuit a [*Nayyar I*] similarly situated Caucasian employee [Borders] who had a long history of misconduct and problems in the internal medicine residency program.
>
> 78.     After Plaintiff identified a similarly situated Caucasian employee, defendants entered into a conspiracy to target and terminate the Caucasian employee for the purpose of defeating Plaintiff's race and national origin claims.
>
> 79.     As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of a rightful cause of action and relief in a separate action and has suffered other losses and damages.

(Compl. ¶¶ 77-79).

In *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg,* 545 U.S. 308 (2005), the Supreme Court established a three-part test to determine whether a state-law claim which contains an embedded federal claim is within the jurisdiction of the federal courts.  The Sixth Circuit has summarized the *Grable* test and distilled the substantial-federal-question doctrine into three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007).

Nayyar's state-law claim is that "[a]s a direct and proximate result of Defendants' conduct, [Nayyar] has been deprived of a rightful cause of action and relief in a separate action and has suffered other losses and damages." (Compl. ¶79).  The "rightful cause of action and relief in a separate action" refers to *Nayyar I*, which Nayyar acknowledges is "a suit based on Title VII alleging [Nayyar's] termination was a result of racial discrimination." (*Id*. ¶52).  Thus, whether Nayyar has a claim for deprivation "of a rightful cause of action" necessarily raises the issue of whether Nayyar had a "rightful cause of action" under Title VII in *Nayyar I.*  The alleged Title VII violation remains a disputed issue in *Nayyar I* and the state court could not

4

resolve the claim for deprivation of a rightful cause of action without first interpreting Title VII, a federal statute, and deciding whether Title VII had been violated.  Therefore, the fourth claim in *Nayyar II* satisfies the first prong of the *Grable* test: it necessarily raises a disputed federal issue.

The next prong of the *Grable* test asks whether the federal interest in the adjudication of Nayyar's Title VII claim is substantial.  In *Mikulski*, the Sixth Circuit highlighted four factors the Supreme Court has identified that affect the substantiality of the federal interest: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007).  The Sixth Circuit went on to add that, "[w]hile certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id*.

Here, the second, third, and fourth factors demonstrate the federal interest is substantial, and the first does not apply.  While Nayyar's case does not involve a federal agency, the federal question is important because it involves the interpretation of Title VII, the nation's primary anti-discrimination statute.  Furthermore, a decision as to whether a Title VII violation occurred could resolve the case.  If there was no Title VII violation, Nayyar's claim that he has been deprived of a rightful cause of action fails.  The Title VII question is not "merely incidental."  Finally, a decision as to the Title VII question would control other cases.  Whether Nayyar's termination

5

was motivated by his race or national origin would impact similarly situated plaintiffs seeking to recover for unlawful discrimination in the future. More immediately, a decision on Nayyar's Title VII claim in *Nayyar II* by a state court while *Nayyar I* is pending in this Court would risk the state and federal courts arriving at inconsistent decisions regarding the same Title VII claim. Therefore, under the substantiality of federal interest factors in *Mikulski* and considering the federal interest in rendering consistent interpretations of federal law, *Nayyar II* satisfies the second prong of the *Grable* test: the federal interest is substantial.

The third prong of the *Grable* test requires that a federal court exercising jurisdiction over a state-law claim with an embedded federal issue determine that the exercise of jurisdiction does not disturb any congressionally approved balance of federal and state judicial responsibilities. The primary factor is whether Congress provided for a federal cause of action under the federal statute in question. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007). At the same time, courts must also consider whether the exercise of jurisdiction would "open[] the federal courts to an undesirable quantity of litigation." *Id.* at 573.

The exercise of jurisdiction over Nayyar's state-law claims by this Court does not upset the congressionally approved balance of federal and state judicial responsibilities. Congress specifically created a federal cause of action under Title VII, the very cause of action in *Nayyar I*. It clearly intended that federal courts adjudicate Title VII claims. Moreover, many states have, like Ohio, enacted statutes similar to Title VII. Plaintiffs in discrimination cases before this Court frequently couple Title VII claims with claims under the Ohio Civil Rights Act. The exercise of jurisdiction over those state-law claims by this Court has not yet opened this Court "to an undesirable quantity of litigation." Thus, the exercise of jurisdiction over *Nayyar II* satisfies the third and final prong of the *Grable* test.

In sum, the fourth claim in *Nayyar II* involves a substantial federal question because it necessarily raises a disputed federal issue, the federal interest in the issue is substantial, and the exercise of jurisdiction does not disturb any congressionally approved balance of federal and state judicial responsibilities.  Therefore, the exercise of subject matter jurisdiction over *Nayyar II* by this Court is proper.

### B.  Rule 42 Consolidation

Consolidation of cases is governed by Fed. R. Civ. P. 42 (a).  Rule 42 grants a federal court the authority to "join for hearing or trial any or all matters at issue in the actions" if the actions before the court have a common question of law or fact.  A court may consolidate cases with or without the consent of the parties.  *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010-11 (6th Cir. 1993).

When a court decides whether to consolidate cases, the Sixth Circuit directs the court to consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993), (quoting *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir.1985)).  In the present case, the risk of inconsistent adjudications is high because the fourth claim in *Nayyar II* is determined by whether Nayyar has a valid Title VII claim in *Nayyar I*.  Furthermore, these cases involve the same parties and require testimony from nearly all the same witnesses.  To allow the cases to proceed separately would waste of judicial resources, as well as burden the parties and witnesses with excessive litigation.

7

Thus, the Court, without dispute from the parties, consolidates *Nayyar I* and *Nayyar II* in the interests of consistent adjudication and the conservation of judicial resources.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**.  The Court hereby **CONSOLIDATES** *Nayyar v. Mt. Carmel Health System, et al.*, case no. 2:12-cv-00189, with *Nayyar v. Mt. Carmel Health System, et al.*, case no. 2:10-cv-00135.

**IT IS SO ORDERED.**

      **s/ Algenon L. Marbley**
      **Algenon L. Marbley**
      **United States District Judge**

**Dated: September 10, 2012**