EXHIBIT 1

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Sunil Nayyar, | : | |
| | : | Case No. 2:12-cv-00189 |
| Plaintiff, | : | |
| | : | Judge Marbley |
| v. | : | |
| | : | Magistrate Judge King |
| Mt. Carmel Health System, *et al.* | : | |
| | : | |
| Defendants. | : | |

**SECOND AMENDED COMPLAINT**
*JURY DEMAND ENDORSED HEREIN*

**NATURE OF CLAIMS**

Now Comes Plaintiff Dr. Sunil Nayyar (hereinafter "Nayyar"), by and through the undersigned counsel, and for his Complaint states as follows:

1. This action is brought because of the unlawful and wrongful conduct and employment practices of Defendants Mount Carmel Health Systems (hereinafter "MC"), and Defendants Doctor John C. Weiss, Program Director, Internal Medicine Residency, Doctor Li Tang, Director of Medical Education, and Dr. Richard Streck, all of whom were employees of MC at relevant times.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of this matters because all of events and conduct alleged herein occurred in Franklin County, Ohio.

3. Venue is proper in this Court as all the acts complained of herein occurred in the State of Ohio, County of Franklin.

**PARTIES**

**Plaintiff**

4. Plaintiff Nayyar, a resident of Franklin County, Ohio, was employed as a resident physician by Mount Carmel Health Systems from July 2006 to July 2009 at its West facility in Franklin County, Ohio and is currently a non-board certified eligible physician.

**Defendants**

5. At all times material herein, Defendant MC's principal place of business or agent is located in Franklin County, Ohio.

6. Defendant MC conducts business as a hospital system and represents on its website that it has "healthcare facilities throughout central Ohio to take care of you and your family." The Mount Carmel Health System has four major hospitals within the Columbus area, Mount Carmel West ("MCW"), Mount Carmel East, Mount Carmel St Ann's, and the New Albany Surgical Hospital in Franklin County, Ohio. MCW has a residency training program accredited by the Accreditation Council for Graduate Medical Education ("ACGME").

7. Defendant John C. Weiss, Program Director, Internal Medicine Residency at Mount Carmel in Franklin County, Ohio is being sued in his individual capacity.

8. Defendant Li Tang, Director of Medical Education at Mt. Carmel in Franklin County, Ohio, is being sued in her individual capacity.

9. Defendant Dr. Richard Streck is Chief Medical Officer and is charged with Medical Education at MC and is sued in his individual capacity.

10. Defendant John Doe defendants are employees or agents of Mount Carmel.

## FACTS

11. MCW is located on the West side of Columbus, Ohio, in an underprivileged neighborhood that frequently treats patients who either have no insurance or pay for services with Medicaid/Medicare.

12. MCW is accredited by the Accreditation Council for Graduate Medical Education ("ACGME") and agrees to the terms and conditions of the accreditation which include complying with regulations and principles of the ACGME.

13. MCW maintains a Graduate Medical Education ("GME") program for Internal Medicine at its facilities where it educates student residents.

14. The education of student-residents involves a three (3) year program of education involving education training and instruction and clinical treatment of patients.

15. For each year of residency, MCW enters into an employment contract with the resident and agrees to comply with MC and ACGME policies and regulations.

16. In regard to pre-termination discipline and termination, the policies and regulations of the ACGME and MC require that all residency programs ensure a fair, efficient, and equitable process for deciding to discipline and termination a resident.

17. In addition to requiring fair and equitable processes, the policies and regulations set forth procedures and processes for discipline/termination and appeal from decisions to discipline/terminate a resident.

18. In July 2009, MCW entered into an employment contract with Plaintiff Nayyar for his third year of residency.

19. The contract provides, *inter alia*, that MCW shall comply with Resident Physician Handbook and Policies Manual ("MCW Handbook") and Hospital Human Resources Policies and Procedures Manual ("MCW Manual").

20. The MCW Handbook provides, in turn, that it complies with the ACGME's institutional requirements for resident physicians.

21. The MCW Handbook sets forth policies and procedures for discipline, termination and confidentiality of a resident's personnel file and prohibits conflicts of interest.

22. From July through August 2009, MCW violated the MCW Manual and ACGME institutional requirements by failing to conduct Plaintiff's investigation, discipline and termination in accordance with these policies and procedures and due process and, in addition, on August 2009 disseminated confidential information from Plaintiff's personnel file to the general public.

23. During the July to August 2009 time period, MCW prevented Plaintiff from adequately responding to charges, evidence and other information presented against him.

24. Plaintiff had no access to his personnel file and investigation file to defend himself.

25. As a consequence of Defendants' conduct, Plaintiff had no knowledge of the scope of the charges and evidence against him and thus was unable to respond to the claims that led to his termination.

26. Defendant Weiss recommended the charges against Plaintiff, presented evidence from his personnel file during a termination hearing, and was given the authority to terminate Plaintiff despite the decision of the committee regarding his termination.

27. Defendant Weiss's participation in the termination was a conflict of interest and was contrary to ACGME due process and grievance institutional

3

requirements because Plaintiff had accused Defendant Weiss of causing the death of patients in the Intensive Care Unit ("ICU").

28. Defendant Mount Carmel was aware of Plaintiff's accusation against Defendant Weiss prior to the termination hearing but took no action to remove Defendant Weiss from the process and permitted him to act with malice and ill will toward Plaintiff.

29. Defendants Streck, Weiss and Li Tang participated, approved, and affirmed the violations alleged herein.

30. Defendants intentionally misrepresented to Plaintiff that they would comply with ACGME and their own policies to terminate Plaintiff's residency program.

31. In particular, Defendants specifically represented by policies, oral statements to comply with such polices, and by conducting termination proceedings that they represented would comport with due process and proscribed procedures.

32. Defendants failed to act as represented and precluded Plaintiff from defending himself, accessing evidence, and responding to accusations against him.

33. In addition, Defendants fraudulently misrepresented that they would keep confidential information contained in Plaintiff's personnel file and knew that the public dissemination would cause irrevocable damage to Plaintiff.

34. Defendants knew their representations were false and misleading and caused Plaintiff to participate in a sham termination process.

35. Because of Plaintiff's race and his accusations that Defendant Weiss' actions would cause the death of ICU patients, Defendants engaged in intentional misrepresentations.

36. Plaintiff justifiably relied on these representations based on his contract, oral statements by Defendants, and Defendants' policies and conduct.

37. Plaintiff has been proximately injured as a result of Defendants' conduct.

38. Plaintiff filed suit in Franklin County Common Pleas Court alleging whistleblower and discrimination claims.

39. The Franklin County action was removed to U.S. District Court, Southern District of Ohio.

40. In August 2010, Plaintiff responded to news media inquires about allegations in his complaint.

4

41.     The complaint contained no information about a medical investigation of Plaintiff or a patient care safety issue caused by him.

42.     Defendants nevertheless disseminated confidential, false information about Plaintiff by publicizing: "Dr. Nayyar was dismissed from his medical residency program following a thorough investigation into a patient care safety issue for which he was responsible."

43.     Defendants' actions violated the contract and their policies, resulting in substantial injury and inference with current and prospective employment and future income, among other damages.

44.     Defendants Weiss and Doe approved and participated in the public disclosure of confidential, career damaging accusation to the general public.

45.     Defendants knew the dissemination was false and misleading because the patient's health was not adversely affected and because the medical investigation was a sham process in retaliation for Plaintiff's whistle-blowing.

46.     In particular, Plaintiff has been unable to enlist with the U.S. Armed Forces for service in Afghanistan and has been unable to obtain employment with residency programs and internal medicine positions due to Defendants' violation of the confidentiality provisions of the contract and other wrongful conduct.

47.     In addition, as a result of the Defendants' conduct, Plaintiff did not finish his residency program, has been unable to obtain a position with a substitute program and consequently is not board eligible physician.

48.     Most medical jobs require a physician to be board eligible (completion of residency program required to be board eligible).

49.     Plaintiff has applied for numerous residency positions and physician jobs but has been unable to obtain a job due to his termination in the third year of residency and public disclosure of his confidential personnel file.

50.     Further, as a result of Defendants' conduct, Plaintiff is not qualified to participate in other board certifications and fellowships in cardiology and internal medicine.

**ALLEGATIONS RELATED TO RACE AND NATIONAL ORIGIN DISCRIMINATION**

51.     Plaintiff is Indian by Race and National Origin.

52.     Plaintiff brought suit based on Title VII alleging his termination was a result of racial discrimination (U.S. District Court suit).

5

53. In this suit, Plaintiff identified a Caucasian Jonathan Borders as a similarly situated person who had not suffered disparate treatment.

54. After Plaintiff identified Mr. Borders, Defendants conspired to terminate Mr. Borders to defeat Plaintiff's discrimination cause of action in U.S. District Court.

55. On December 15, 2011, Defendant Weiss testified in the U.S. District Court suit that he progressively disciplined Mr. Borders and was obligated to do so due to the undisclosed disability of Mr. Borders, and that he had knowledge of allegations of drug use and other poor behavior unrelated to the alleged disability.

56. Defendant also testified that Mr. Borders was fired toward the end of his residency program.

57. Defendants conspired and targeted Mr. Borders for the purpose of defeating Plaintiff's discrimination claims in U.S. District Court.

58. Plaintiff learned of these actions on December 15, 2011 at the close of discovery and has been unable to pursue such claims in U.S. District Court, since discovery is now closed.

59. As a consequence of Defendants' conspiracy and targeting of Mr. Borders, Plaintiff may be unable to prevail on his claim of racial discrimination.

60. As a proximate cause of Defendants' wrongful and harmful conduct, Plaintiff's career as physician has been irrevocably damaged, resulting in millions of dollars in lose income as internist and cardiologist.

### ADDITIONAL ALLEGATIONS REGARDING ACGME WORK HOUR LIMITATION AND BILLABE SERVICES VIOLATIONS AND FEDERAL MEDICARE GRADUATE MEDICAL EDUCATION REGULATION VIOLATIONS

61. MCW's residency program is accredited and governed by the ACGME guidelines.

62. MCW's residency program is funded by the United States of America by direct medical education payments to MCW to cover the expense of the residents' education, and by indirect payments by adding costs to patient care associated with the operation of a teaching program.

63. The direct and indirect funding is provided by the federal Medicare Act program.

64. To receive Medicare graduate medical education funds, MCW's residency program must comply with ACGME accreditation program requirements.

6

65. Federal Medicare funding regulations and ACGME accreditation requirements place work hour limits on residents' work schedules and hours.

66. At all relevant times, the work hour limits regulations limited residents to a maximum of 30 consecutive hours ("30 hour rule") and maximum of 80 weekly work hours averaged over 4weeks ("80 hour rule").

67. At all relevant times, mandated "rest" periods after 10 hour shifts are provided to residents between work shifts and residents may not be contacted about a medical/treatment matter during the mandated rest periods.

68. MCW is currently and/or was recently on probation for serious ACGME violations that occurred in the MCW residency program.

69. MCW intimidated and pressured Plaintiff Nayyar and other residents to violate ACGME rules and regulations.

70. From 2006 through 2009, Plaintiff Nayyar was pressured and intimidated to report to ACGME fewer work hours than actually performed by him to comply with federal and ACGME work hour limitations.

71. From 2006 to 2009, Plaintiff Nayyar complained to MCW that it was violating the 80 and 30 hour rules, but was intimidated by MCW to show compliance.

72. In addition to work hour rule limitation violations, MCW engaged in intimidation by causing Plaintiff Nayyar to submit favorable evaluations each year so that MCW would not lose its ACGME accreditation.

73. Plaintiff Nayyar objected to providing favorable evaluations and reported his objection to MCW officials and staff.

74. Plaintiff Nayyar also reported that he was forced by MCW to work longer hours than permitted under the ACGME rules.

75. ACGME's policy is that residents, such as Plaintiff Nayyar, should not be retaliated against for reporting violations of the American Medical Association Rules and Medicare and Medicaid violations.

76. In July 2009, MCW initiated a medical investigation into a matter involving Plaintiff Nayyar's placement of an A-line in a patient's arm in MCW's ICU ("A-line incident").

77. In violation of ACGME and federal regulations, MCW contacted Plaintiff Nayyar during his "rest period" regarding the A-line incident, by contacting him less than 10 hours after his shift ended.

7

78. Plaintiff Nayyar's performance of this A-line procedure occurred without the direct participation of a licensed physician as a billable service.

79. Defendant St. John failed to adequately supervise Plaintiff Nayyar insofar Plaintiff Nayyar and other residents were told to not contact Defendant St. John during the late night through morning shift and disturb his sleep at home, resulting in residents making medical decisions without adequate supervision by a licensed physician.

80. As a result of the Defendant St. John's practice of not permitting residents to contact him during the late night through morning shift, MCW failed to provide services in compliance with ACGME, Ohio State Medical Board and MC policies and practices resulting in placing patients at substantial risk of harm and injury.

81. MCW's failure to adequately supervise and provide appropriate staff in the ICU violated ACGME and federal Medicare regulations regarding education and supervision of patients, insofar as MCW failed to provide medical treatment services in accordance with professional medical standards and endanger patients.

82. As a result of Plaintiff Nayyar's past and continuous complaints of ACGME violations and federal Medicare regulations MCW and defendants retaliated against Plaintiff Nayyar by investigating the A-line incident and terminating his employment.

83. MCW placed residents in the ICU to provide critical and key treatment to patients without the presence of a licensed, teaching physician.

84. Defendant St. John, director of ICU, as well as other critical care licensed physicians was not present during critical care services performed by unlicensed residents in violation of Medicare and ACGME rules.

85. As a consequence of the absence of Defendant St. John and other critical care physicians in the ICU during critical care, as well as Defendant St. John's practice of intimidating residents who called him during late night to morning shift, ICU patients suffered unreasonable risk, substandard care, and in one instance a patient, who was being treated for H1N1 died as a result of MCW and defendants violations of ACGME and federal Medicare regulations.

86. From 2007 through July 2009, Plaintiff Nayyar and other residents protested and complained about violation of the ACGME regulation governing the total number of patients that could be admitted within a 24 hour period to MCW administrators and supervising physicians.

87. From 2007 though July 2009, Plaintiff Nayyar and other residents admitted more patients than authorized by ACGME rules, and complained about these violations.

8

88. MCW responded to Plaintiff Nayyar's and residents' protests and complaints by ordering Plaintiff Nayyar and residents to admit more patients than authorized.

89. MCW intimidated all residents to not report ACGME patient admission violations.

90. MCW's failure to comply with federal Medicare regulations and ACGME regulations (federal Medicare requires ACGME compliance) defrauded the United States of America.

91. MCW retaliated against Plaintiff Nayyar because his complaints and protests would result in violation and loss of federal Medicare direct and indirect funding of resident education programs.

**First Claim for Relief**
**Breach of Contract**

92. Plaintiff hereby re-alleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 91 above.

93. Plaintiff entered into a contract in July 2009.

94. Defendants agreed to comply with ACGME and MC policies and procedures and its contracts with Plaintiff.

95. Defendants breached the contract by failing to comply with its policies regarding the investigation of medical-patient incidents, failing to comply with investigation, termination and appeal procedures, and failing to comply with work hour limitation and patient admission limitations,  and causing Plaintiff to file false program evaluations.

96. As a direct and proximate result of Defendants' breach, as described herein, Plaintiff has suffered loss of income and benefits, emotional distress, loss of opportunity, anxiety, anguish, humiliation, termination, and suffered false and malicious charges of misconduct and other incidental and consequential damages and expenses, all to Plaintiff's damages in an amount according to proof.

97. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff's earning capacity is permanently impaired insofar as he will not obtain a residency, is not board eligible and suffers from irrevocable damage to his professional reputation, lose of professional opportunities and loss of life time earning capacity arising from his wrongful termination and public dissemination of misleading information in his confidential, personnel file.

**Second Claim for Relief**
**Promissory Estoppel**

98.     Plaintiff hereby re-alleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 66 above.

99.     Defendants represented orally and in writing that they would comply with ACGME policies and MC policies which included conducting the investigation and termination process in accordance with ACGME institutional due process requirements, that the processes would be fair and equitable, and that his personnel file would be kept confidential.

100.    Plaintiff relied on these representations to his detriment.

101.    As a direct and proximate result of Defendants' conduct, as described herein, Plaintiff Dr. Nayyar has suffered loss of income and benefits and permanent impairment of earning capacity, emotional distress, loss of professional opportunity, debilitating anxiety, anguish, humiliation, termination, and suffered false and malicious charges of misconduct and other incidental and consequential damages and expenses, all to Plaintiff's damages in an amount according to proof.

**Third Claim for Relief**
**Fraudulent Misrepresentation**

102.    Plaintiff hereby re-alleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 70 above.

103.    Defendants fraudulently represented and induced Plaintiff to reasonably believe that a medical investigation would be fair, equitable and in accordance with MC's policies and practices, that the termination process would comply with MC and ACGME policies and practices and that his personnel file would be kept confidential.

104.    Defendants intentionally failed to comply with their own policies and practices and those of the ACGME.

105.    Defendants fraudulently and with malice and ill will engaged in fraud because of Plaintiff's whistle-blowing and because of Plaintiff's race and national origin.

106.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered irrevocable damage to his reputation, career, and earning capacity.

**Fourth Claim for Relief**
**Revised Code 4112.02 and 4112.99**

107.    Plaintiff hereby re-alleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 75 above.

10

108.    Plaintiff identified in another lawsuit a similarly situated Caucasian employee who had a long history of misconduct and problems in the internal medicine residency program.

109.    After Plaintiff identified a similarly situated Caucasian employee, Defendants entered into a conspiracy to target and terminate the Caucasian employee for the purpose of defeating Plaintiff's race and national origin claims.

110.    As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of a rightful cause of action and relief in a separate action and has suffered other losses and damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.    Award (i) back pay, front pay and/or reinstatement of the terms and conditions of employment and his residency; (ii) any benefits Plaintiff Nayyar enjoyed had Defendants not engaged in wrongful conduct;

B.    All other damages and losses resulting from the claims presented in this Complaint.

C.    Award Plaintiff consequential damages for economic loss he has suffered as a proximate result of Defendants' conduct;

D.    Award Plaintiff compensation for past and future pecuniary losses resulting from Defendants' wrongful conduct;

E.    Award Plaintiff punitive damages for malicious and reckless conduct by Defendants.

F.    Award Plaintiff pre and post judgment interest on all sums awarded;

G.    Award Plaintiff the costs incurred in this action and reasonable attorneys' fees; and

H.    Grant such other legal and equitable relief as is necessary and proper.

        Respectfully submitted,

        s/William W. Patmon III_____
        William W. Patmon III, Esq. (0062204)
        M. Nikol Madison, Esq. (0084137)
        The Patmon Law Firm
        88 East Broad Street, Suite 2070
        Columbus, Ohio 43215
        Phone: (614) 824-4193
        Facsimile: (614) 448-4393
        wpatmon@patmonlaw.com
        mmadison@patmonlaw.com
        *Counsel for Plaintiff*

## JURY DEMAND

Plaintiff Nayyar requests a jury to hear and decide all issues of fact.

        Respectfully submitted,

        s/William W. Patmon III_____
        William W. Patmon III, Esq. (0062204)
        M. Nikol Madison, Esq. (0084137)

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the forgoing was served this 4th day of October, 2012, via electronic mail, upon all counsel registered with this Court's electronic service.

        /s/ M. Nikol Madison_____
        William W. Patmon III, Esq. (0062204)
        M. Nikol Madison, Esq. (0084137)